UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RANDY S. MERRYFIELD and
SUSAN M. VANSTRATEN,

                Plaintiffs,

     v.                                    Case No. 17-C-742

KLI, INC., *et al.*,

                Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Randy Merryfield and Susan Vanstraten, both Wisconsin residents, sued Defendants KLI, Inc., a Delaware corporation; Werner Co., a Delaware corporation; Alias Insurance Companies 1–2, believed to be insurers of KLI; Alias Insurance Companies 3–4, believed to be insurers of Werner; and, as a nominal defendant, JBS USA Holdings, Inc. Employee Group Health Plan, a Colorado corporation, for injuries Merryfield sustained when he fell from a ladder. Plaintiffs claim that the ladder was defectively designed by Keller Industries, Inc., and that KLI and Werner are successors to Keller Industries' liability. The Court has jurisdiction over the claims under 28 U.S.C. § 1332. This matter comes before the Court on a motion for summary judgment by KLI and Werner. ECF No. 41. For the reasons stated below, the motion will be denied. In addition, Plaintiffs' Rule 37 motion for sanctions will be granted due to Defendants' failure to respond.

## BACKGROUND

The following background facts, set forth in the light most favorable to Plaintiffs as the nonmoving parties, are taken from the undisputed portions of the parties' proposed findings of fact.

In 2003, Merryfield purchased a Model 678 8-foot Type II Duty Rated fiberglass step ladder manufactured by Keller Industries, Inc. in 1996. On February 20, 2016, Merryfield was injured when he fell from the third step of the ladder when the ladder's top cap separated from the front rails. The parties dispute what caused the separation. According to Merryfield, prior to his fall, he had set the ladder up near his porch and all four feet of the ladder were set firmly on concrete. Additional factual material will be set forth as necessary in the analysis that follows.

## LEGAL STANDARD

Summary judgment should be granted when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, the time and expense of the parties and the court should not be wasted on a trial when there are no material facts in dispute, one party is entitled to judgment on those facts, and thus there is nothing to try. In deciding a motion for summary judgment, all reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoted source and internal quotation marks omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

# ANALYSIS

In their motion for summary judgment, Defendants first argue that the testimony of the plaintiffs' expert, Stan Johnson, should be excluded under Federal Rule of Evidence 702 because Johnson is not qualified to offer an expert opinion in this matter, and further that his conclusions are not supported or reliable. Defendants then argue that Plaintiffs cannot support their claim of negligent design as a result of Johnson's exclusion or overcome the presumption of non-defect under Wisconsin law. Finally, Defendants argue that Plaintiffs have not presented sufficient evidence to establish that Defendants are liable as successors to Keller Industries, Inc. under Wisconsin law.

## I. Admissibility of Johnson's expert testimony

### A. Qualification of Johnson as an expert

KLI and Werner argue that Johnson is not qualified to give expert testimony regarding carbon fiber and ladder design because his Curriculum Vitae (CV) does not establish that he has specific knowledge or experience in those areas. Plaintiffs counter that Johnson's prior working experience with fiberglass, combined with his knowledge of material strength and general design principles, are sufficient to qualify him to be an expert in this case.

To determine whether an expert is qualified, "[t]he test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702—knowledge, skill, experience, training, or education." *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). The question "is not whether an expert witness is qualified in general, but whether his 'qualifications provide a foundation for [him] to answer a specific question.'" *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). When

determining whether an expert is qualified, "the Court should also consider the proposed expert's full range of experience and training in the subject area." *Id.* at 616.

Upon examination, Johnson's CV and design experience make evident that he is qualified to be an expert in this case. Johnson's "previous fiberglass ladder investigations and a *lifelong experience working with fiberglass*," combined with his familiarity with "United States and International safety standards," and lengthy product design career, equip Johnson with a foundation to provide answers to questions related to Plaintiffs' design defect theory. ECF No. 44-2 (emphasis in original). Johnson's testimony is based upon the effects forces have upon materials, relatively basic concepts on which Johnson is qualified to opine. Consequently, the Court finds that Johnson is qualified to be an expert in this case.

### B. Reliability of the methods used in Johnson's expert report

Defendants also argue that Johnson's opinions are inadmissible for other reasons, claiming that Johnson's hypothesis for causation and alternative design is *ipse dixit* because they are not based on adequate facts, testing, or data. They assert that Johnson's testimony should be ruled inadmissible for the same reasons that the expert testimony in *Belskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 892 (7th Cir. 2011) was—that the expert "leap[t], without data or testing, from the accepted premise . . . to his ultimate conclusion." *Id.* at 892.

In *Bielskis*, the plaintiff was injured when the mini-scaffolding he was standing on collapsed. *Id.* at 890. The plaintiff's expert testimony was excluded because the expert "made no attempt to test his hypothesis," but instead only visually inspected the allegedly defective scaffold. *Id.* at 894. In addition, the expert's alternative design relied solely on design principles without any further support. *Id.* at 894–95. In contrast, Johnson did more than just a visual inspection. As stated in

Johnson's addendum to his expert report, Johnson tested a 2017 exemplar ladder that utilized a design in line with his proposed alternative—it used an additional rivet near the top cap to increase stability and reduce wear. Johnson also provided an explanation as to what the design defect was and how this alleged defect corresponds to the damage visible on the ladder.

Defendants also argue that Johnson's opinions are inadmissible because he did not test the alternative design. *Daubert*, however, "is a flexible test and no single factor, even testing, is dispositive." *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 870 (7th Cir. 2001). Here, although the source of the wear damage is disputed by both experts, both agree that the ladder failed due to wear to the structural integrity of the fiberglass, which resulted in the ladder's structural instability. Johnson argues that ordinary use loosened the plates riveted to the top side of the ladder rails, allowing for rail movement and fiberglass wear. In particular, Johnson states that the two rivet design is unreasonably dangerous, and proposes that an alternative design that utilizes additional rivets for support, in addition to other structural changes, would be safer. Unlike *Bielski*, where the expert did not provide any evidence that his proposed alternative design was reasonable, Johnson provides examples of ladders that utilized additional rivets, including other ladders manufactured by Keller Industries, Inc. around the same time as the ladder Merryfield used, establishing that his proposed alternative design is reasonable.

Last, KLI and Werner argue that Johnson's testimony is inadmissible because he failed to eliminate other potential causes for Merryfield's fall. In particular, the possibility that misuse or abuse of the ladder may have contributed to the ladder instability and ultimately resulted in Merryfield's fall as Defendants' expert, Jon Ver Halen, found. But Johnson noted in his report that Merryfield denied any misuse of the ladder and thus was justified in ruling it out as an alternative

explanation for the failure, especially since he viewed the ladder's design as defective. As I noted in a previous ladder case in which Johnson testified, "when the case involves recreating a relatively simple accident, the court's gatekeeping role is limited by the simple fact that a jury is more than capable of distinguishing between plausible and implausible explanations and weighing the expert's presentation against the other evidence." *Schmude v. Tricam Indus., Inc.*, 550 F. Supp. 2d 846, 853 (E.D. Wis. 2008), *aff'd*, 556 F.3d 624 (7th Cir. 2009). Although Defendants' expert reached a different conclusion as to the cause of the accident, the record does not support a finding that Johnson's methodology was unreliable as a matter of law. Accordingly, the Court concludes that Johnson's testimony is admissible under Rule 702.

Because Johnson's testimony will not be excluded, Defendants' argument that Plaintiffs cannot support their claims of defect or causation fails. The argument was contingent on Johnson's testimony being excluded. With Johnson's expert testimony in the case, there is sufficient evidence for a jury to find in favor of the plaintiffs. Defendants' motion for summary judgment on this ground is therefore denied.

## II. Wisconsin's presumption of non-defect

KLI and Werner also argue that they are entitled to summary judgment because Merryfield does not have sufficient evidence to overcome the presumption of non-defect that arises under Wisconsin law, and thus cannot prove that the ladder was defectively designed. Plaintiffs argue that Defendants are not entitled to the presumption, asserting that Defendants do not have sufficient evidence to entitle them to the presumption.

In order to prove a design defect on a claim of strict liability in Wisconsin, the claimant must prove:

(a) That the product is defective because it . . . is defective in design . . . . A product is defective in design if the foreseeable risks or harm posed by the product could have been reduce or avoided by the adoption of a reasonable alternative design by the manufacturer and the omission of the alternative design renders the product not reasonably safe.

(b) That the defective condition rendered the product unreasonably dangerous to persons or property.

(c) That the defective condition existed at the time the product left the control of the manufacturer.

(d) That the product reached the user or consumer without substantial change in the condition in which it was sold.

(e) That the defective condition was a cause of the claimant's damages.

Wis. Stat. § 895.047. Under Wis. Stat. § 895.047(3)(b), "[e]vidence that the product, at the time of sale, complied in material respects with relevant standards, conditions, or specifications adopted or approved by a federal or state law or agency shall create a rebuttable presumption that the product is not defective." In order to be entitled to a presumption, the party relying on the presumption bears "the burden of proving the basic facts, but once the basic facts are found to exist the presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Wis. Stat. § 903.01. It is unclear how this rule adds to the burden of proof the plaintiff must carry to prove defect in a product liability lawsuit even in the absence of evidence that the product met applicable standards.

In any event, Defendants assert that the ladder at issue met the requirements of ANSI A14.5 at the time it was manufactured. Under OSHA 1926 Subpart X App A, plastic ladders that meet ANSI A14.5 are considered to meet the requirements of OSHA 1926.1053(a)(1), as codified under 29 C.F.R. § 1926.1053(a)(1). Consequently, Defendants claim they are entitled to a presumption

that the product is not defective because the ladder complied with the specifications of a federal agency. ECF No. 42.

Defendants' contention, however, is disputed by Plaintiffs, who point to the lack of any supporting evidence that the ladder met the requirements aside from Ver Halen's testimony. In deposition, regarding the testing Ver Halen conducted 15 to 20 years ago, he admitted that he had no documents that confirm the testing occurred, what the results of the testing were, the exact specifications of the ladder upon which the tests were conducted, and whether the specifications were the same as the ladder at issue. Viewing theses facts in a light favorable to Plaintiffs, the nonmoving party, it is feasible that a reasonable jury could find that the ladder at issue was not made according to the specifications. But even if the presumption applies, it is rebuttable by a preponderance of the evidence. Wis. Stat. § 903.01. Plaintiffs have offered evidence that, if believed by the jury, is sufficient to rebut the presumption. Defendants are therefore not entitled to summary judgment.

## III. Successor liability and motion for sanctions

Defendants argue that Plaintiffs have not presented sufficient evidence to support their claim that Defendants have successor liability to Keller Industries, Inc., the company that manufactured the ladder. Keller, according to Defendants, filed for bankruptcy in April of 1996. Defendants contend that in the bankruptcy proceeding, Keller changed its name to Rellek, Inc., and Rellek was "discharged" in February 2004. ECF No. 45, ¶ 90. Since they did not design, manufacture, or sell the ladder involved in the accident, Defendants contend that they cannot be directly liable. Additionally, because Plaintiff has presented no evidence that would allow the Court to impose successor liability upon them, Defendants claim they are entitled to summary judgment.

In response, Plaintiffs argue that the Court should not even consider this ground for summary judgment because "defendants have failed, for nearly two months, to produce the documents reflecting the corporate history and the terms of any asset or liability purchases which this court specifically ordered them to produce, thus preventing plaintiffs from formulating a meaningful response to defendants' motion." ECF No. 49 at 25. Plaintiffs point out that Defendants produced William Demeritt as a witness pursuant to a Rule 30(b)(6) notice of deposition requesting a person to testify about KLI's corporate history and successor liability and that Demeritt claimed a lack of knowledge about the content of such documents. Defendants then submitted an affidavit by Demeritt in support of their motion for summary judgment describing the very history he denied knowledge of at the deposition. Not only does the history appear inconsistent with Demeritt's deposition testimony, but it is conclusory and unsupported by any documents.

Plaintiffs also point to proceedings in two other ladder cases involving at least one of the defendants—one a state court action in Broward County, Florida, and the other in the United States District Court for the Middle District of Florida— in which successor liability of KLI was addressed. It appears that in both cases, the courts relied upon agreements actually produced and of record to conclude that KLI had successor liability in product liability actions arising out of failures of ladders manufactured by Keller. ECF No. 51, Ex. C and D. Because of Defendants' failure to properly and timely respond to their discovery requests, and in light of the evidence bearing on the question cited in the other cases, Plaintiffs argue it would be improper to grant Defendants' motion on the ground that Plaintiffs have failed to establish their successor liability.

Plaintiffs' arguments opposing summary judgment on successor liability at this stage of the proceeding are persuasive. Given the incomplete responses to discovery on the issue by Defendants,

the conclusory and unsupported assertions of Demeritt in his affidavit, and the seemingly inconsistent history recounted in the other court proceedings, summary judgment on this issue would be improper. More importantly, Plaintiffs have filed a motion asking the Court to strike Defendants' denial of successor liability as a Rule 37 sanction for their failure to respond to Plaintiffs' discovery requests. ECF No. 54. Plaintiffs filed their motion for sanctions on August 2, 2018, and Defendants failed to respond within the time allowed under the Local Rules. Civil L.R. 7(b) (requiring opposing party's response within 21 days of service of motion). As a sanction for noncompliance, the rule provides: "Failure to file a memorandum in opposition to a motion is sufficient cause for the Court to grant the motion." Civil L.R. 7(d). Based on Defendants' failure to respond to Plaintiffs' motion for sanctions and given the fast approaching trial date, Plaintiffs' motion will be granted and Defendants' defense denying successor liability is struck.

## CONCLUSION

For the reasons set forth above, it is ordered that Defendants' motion for summary judgment (ECF No. 41) is **DENIED**.

It is further ordered that Plaintiffs' motion for sanctions (ECF No. 54) is **GRANTED**.

Dated at Green Bay, Wisconsin this  30th   day of August, 2018.


s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court